UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **DENA ANN DUPRE** | **CIVIL ACTION** |
| **VERSUS** | **NO.  20-02986** |
| **ANDREW SAUL, ACTING COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION** | **SECTION: KWR** |

**ORDER AND REASONS**

**I.   Introduction**

This is an action for judicial review of a final decision of the Commissioner of Social Security pursuant to Title 42 U.S.C. § 405(g).  The Commissioner denied Dena Ann Dupre claim for Disability Insurance and Supplemental Security Income under Title II of the Social Security Act, Title 42 U.S.C. § 1382(c).  On August 20, 2021, the parties consented to proceed before the undersigned pursuant to Title 28 U.S.C. §636(c). *See* R. Doc. 19.  This opinion follows.

**II.   Factual Summary**

The claimant, Dena Ann Dupre ("Dupre"), filed this appeal of the denial of Disability Insurance Benefits and Supplemental Security Income. R. Doc. 1, p. 2.  Dupre is a forty-four-year-old female who suffers from diverticulitis, peripheral neuropathy, heart, problems, and hand/wrist/arm problems, depression, anxiety disorder, panic disorder, Crohn's Disease, and Irritable Bowel Syndrome.  R. Doc. 15-3, Tr. 84-85.  Dupre alleges that her disability started on August 4, 2017.  R. Doc. 15-3, Tr. 69.

Her application was initially denied on August 22, 2018.  R. Doc. 15-3, Tr. 105, 109.  Dupre then filed a request for a hearing on September 20, 2018, which took place on August 7, 2019 before

Administrative Law Judge Nancy Pizzo ("ALJ"). R. Doc. 15-2, Tr.12-25. Dupre filed her claim alleging that she was disabled as a result of diverticulitis, peripheral neuropathy, heart problems, tachycardia, back problems, hand/wrist/arm problems, depression, an anxiety disorder, a panic disorder, Crohn's Disease, Irritable Bowel Syndrome, GERD, syncope, bladder problems, sleep problems, and a Vitamin D deficiency. R. Doc. 15-5, Tr. 180. The ALJ determined that Dupre was not disabled. R. Doc. 15-2, Tr. 12-25. That decision was affirmed by the Appeals Council. *Id.* at Tr. 1-5.

The ALJ found that Dupre had the following severe impairments: irritable bowel syndrome, obesity, supraventricular tachycardia, syncope, chronic venous insufficiency, neuropathy, headaches, and depression. R. Doc. 15-2, Tr. 14, Findings 3. The ALJ further held that the claimant does not have an impairment or combination of impairments that meets or medically equals the severity of any medical listing. *Id.*, Tr. 15, Finding 4. The ALJ noted that Dupre has the residual functional capacity ("RFC") to perform sedentary work except that she requires the ability to alternate positions every thirty (30) minutes. *Id.,* Tr. 16, Finding 5. The ALJ further held that Dupre is limited to occasional stooping, kneeling, crouching, and crawling, and that she can perform no balancing. *Id.*

The ALJ additionally held that Dupre can perform no more than occasional overhead reaching bilaterally, she is percluded from working with dangerous or hazardous machinery, and must avoid concentrated exposure to extreme heat, noise, vibration and environmental irritants. *Id*. The ALJ also held that Dupre could perform simple directions, instructions, and work-related decisions with no fast-paced production requirements and only routine workplace changes. *Id.* The ALJ further held that Dupre can not tolerate contact with the general public and can only tolerate occasional direct interactions with coworkers and suprvisors. *Id.*

Thereafter, the ALJ determined that Dupre could not perform any past relevant work and that she had a RFC to perform the full range of sedentary work. *Id.*, Tr. 23, Finding 6. The ALJ found that Dupre is a younger individual, given her age of 43 years on the alleged disability onset date. *Id.* The ALJ noted that Dupre had at least a high school education and was able to communicate in English. The ALJ additionally noted that the transferability of jobs skills was not material to the determination because the Medical Vocational Rules supported a finding that she was not disabled. *Id.*

The ALJ further held that considering Dupre's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that she can perform. She found that Dupre can work as an addresser and/or a sorter. The ALJ also noted that the Vocational Expert's opinion was that Dupre was able to make a successful adjustment to work that exists in significant numbers in the national economy and that a finding of "not disabled" is appropriate. *Id.* Therefore, the ALJ held that Dupre is not under a disability from August 4, 2017 through the date of the decision. R. Doc. 15-2, Tr. 25.

**III.    Standard of Review**

The role of this Court on judicial review under Title 42 U.S.C. § 405(g) is to determine whether there is substantial evidence in the record to support the determination of the fact finder. The Court may not re-weigh the evidence, try issues *de novo*, or substitute its judgment for that of the Secretary. *Allen v. Schweiker*, 642 F.2d 799, 800 (5th Cir. 1981). If supported by substantial evidence, the Secretary's findings are conclusive and must be affirmed. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *see also Wilkinson v. Schweiker*, 640 F.2d 743, 744 (5th Cir. 1981) (citations omitted).

Substantial evidence is more than a scintilla and less than a preponderance, and is considered relevant such that a reasonable mind might accept it as adequate to support a conclusion. *See Richardson*, 402 U.S. at 401. It must do more than create a suspicion of the existence of the fact to be established, but no "substantial evidence" will be found only where there is a "conspicuous absence of credibility choices" or "contrary medical evidence." *Payne v. Weinberger*, 480 F.2d 1006, 1007 (5th Cir. 1973); *Hemphill v. Weinberger*, 483 F.2d 1137, 1138 (5th Cir. 1973).

The concept of disability is defined in the Social Security Act, as the "inability to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted  . . . for a continuous period of not less than twelve months." *See* 42 U.S.C. §416(i)(1), §423(d)(1)(A). Section 423(d)(3) of the Act further defines "physical or mental impairment" as "an impairment that results from anatomical, physiological or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *See* 42 U.S.C. §423(d)(3).

In determining whether a claimant is capable of engaging in any substantial gainful activity, the Secretary applies a five-Step sequential evaluation process. The rules governing the steps of this evaluation process are: (1) a claimant who is working and engaging in a substantial gainful activity will not be found to be disabled no matter what the medical findings are; (2) a claimant will not be found to be disabled unless he has a "severe impairment"; (3) a claimant whose impairment meets or is equivalent to an impairment listed in Appendix 1 of the regulations will be considered disabled without the need to consider vocational factors; (4) a claimant who is capable of performing work that he has done in the past must be found "not disabled"; and (5) if a claimant is unable to perform his previous work as a result of his impairment, then factors such as his age, education, past work experience, and residual functional capacity must be considered to determine whether he can do other

4

work. *See Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990). The burden of proof is on the claimant for the first four steps, but shifts to the Secretary at Step Five. *Anderson v. Sullivan*, 887 F.2d 630, 632-33 (5th Cir. 1989).

**IV.** **Analysis**

    a. **ALJ failed to incorporate limitations from NP Sevin's opinion**

Dupre contends that the ALJ's finding that, while she has severe impairments, she still retained the residual functional capacity to perform sedentary work, is not based upon substantial evidence. R. Doc. 20, p. 3. Dupre contends that the ALJ's opinion does not provide a logical bridge from the evidence to the ultimate conclusions because the ALJ specifically stated that she found nurse practitioner Amber Sevin's ("FNP Sevin") opinion consistent regarding Dupre's physical limitations, but failed to incorporate FNP Sevin's findings on Dupre's limitations in her opinion. R. Doc. 20, p. 6.

The Commissioner contends that the ALJ properly assessed the opinion of FNP Sevin. R. Doc. 21. The Commissioner further contends that the ALJ explicitly discussed FNP Sevin's opinion with respect to breaks and absences and provided specific reasons for discounting it. Therefore, the Commissioner contends that the ALJ's opinion is based upon substantial evidence.

Nurse Practitioner Sevin made the following finding:

4. Would your patient need to recline or lie down during a hypothetical 8-hour workday in excess of the typical 15-minute break in the morning, the 30-60 minute lunch, and the typical 15-minute break in the afternoon?
☑ Yes ☐ No

c. Will your patient need to take unscheduled breaks during an 8-hour workday? ☑ Yes ☐ No
   If yes, 1) How often do you think this will happen? _____
       2) How long will each break last before returning to work? _____

The ALJ noted that on May 29, 2018, FNP Sevin's opinion was consistent with the medical evidence with respect to the nature of the claimant's physical limitations. While she noted the

5

consistency, she found that FNP Sevin's conclusion that Dupre would require unscheduled breaks and multiply monthly absences is not supported by adequate explanation or citation to evidence. *Id*. at Tr. 22.  The ALJ also found that FNP Sevin's opinion regarding unscheduled breaks and multiple monthly absences is inconsistent with the treatment records because beta-blockers were successful in controlling Dupre's syncope and episodes of incontinence. *Id*. The ALJ further noted that the other symptoms did not occur with a severity or frequency that would be expected to prevent the claimant for maintaining fulltime work. *Id*.

The RFC is an assessment of a claimant's ability to perform work "on a regular and continuing basis." *See* 20 C.F.R. § 404.1545(a) (2017); *see also* SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996) (defining "regular and continuing basis" as "8 hours a day, for 5 days a week, or an equivalent work schedule"). The RFC constitutes a function-by-function evaluation, including both exertional and non-exertional factors, based on all relevant evidence in the case record. § 404.1545(a)(3); SSR 96-8p, 1996 WL 374184, at *3–5. A claimant's RFC is an assessment of the most she can do despite her limitations or restrictions. *See* §404.1545(a); SSR 96-8p, 1996 WL 374184, at * 1. The ALJ is solely "responsible for determining an applicant's residual functional capacity." *Ripley v. Charter*, 67 F.3d 552, 557 (5th Cir. 1995) (citing § 404.1546). Nevertheless, the ALJ's RFC determination must be supported by substantial evidence. *Id*.

In *Ripley v. Chater*, the ALJ determined that the claimant had the RFC to perform sedentary work and was therefore not disabled.  *Id*.  On appeal, the claimant argued that the ALJ's RFC determination was not supported by substantial evidence.  *Id*.  The Fifth Circuit noted the record contained a large amount of medical evidence establishing the claimant had a back problem, but despite the voluminous medical evidence, the record did not clearly establish the effect claimant's back problem had on his ability to work.  *Id*.  Thus, the court remanded the case with instructions that

6

the ALJ obtain medical evidence from the claimant's treating physician regarding the impact claimant's back condition had on his capacity to work. *Id*. at 557–58. The court explained that substantial evidence did not support the ALJ's RFC determination because the court could not determine the effect the claimant's conditions, "no matter how 'small' " had on his ability to work, absent a report from a qualified medical expert. *Id*. at 558 n.27.

Similarly, in *Williams v. Astrue*, the Fifth Circuit re-affirmed its decision in *Ripley*, explaining "that an ALJ may not—without opinions from medical experts—derive the applicant's residual functional capacity based solely on the evidence of his or her claimed medical conditions." 355 F. Appx 828, 832 n.6 (5th Cir. 2009). The court explained that although the ALJ is entitled to assign non-controlling weight to a treating physician's opinions, the ALJ's findings must still be supported by substantial evidence. *Id*. at 831–32. In making his determination, the "ALJ may not rely on his own unsupported opinion as to the limitations presented by the applicant's medical conditions." *Id*. at 832 n.6. Additionally, the ALJ may not derive the RFC finding from the raw data in the record and "succumb to the temptation to play doctor" rather than seeking out competent medical opinion. *Frank v. Barnhart,* 326 F. 3d 618, 622 (5th Cir. 2003).

In this case, the ALJ decided that FNP Sevin's opinion that Dupre would require unscheduled breaks and multiple monthly absences was not supported by either an adequate explanation or citation to the record. Rec. Doc. 22. The ALJ went on to find that by looking at the evidence, the treatment records did not support the FNP Sevin's finding because medication successfully controlled her fainting or syncopal episodes. *Id*. The ALJ further held that instances of incontinence and other symptoms did not occur with a severity or frequency that would be expected to prevent her from maintaining a fulltime work schedule.

The ALJ found that Dupre had the RFC to perform sedentary work except that she would have to alternate positions every 30 minutes and would be limited to occasional stooping, kneeling, crouching, and crawling. R. Doc. 15-2. She further found that Dupre could perform no balancing, no more than occasional overhead reaching bilaterally, and no more than occasional work with dangerous or hazardous machinery. *Id.* She found that Durpe was limited to simple directions, instructions, or work-related decisions, could not tolerate contact with the general public, and could only occasionally interaction with coworkers and supervisors. *Id.*

Assuming that the ALJ was entitled to not give FNP Sevin's opinion controlling weight, her opinion also conflicts with the physical RFC assessment of Dr. Karl K. Boatman in the record and dated August 20, 2018. R. Doc. 15-3. Dr. Boatman found that Dupre could stand and/or walk with normal breaks for a total of six (6) hours in an eight (8) hour day which was contradicted by FNP Sevin. R. Doc. 16. The ALJ determined that Dupre had greater physical limitations than Dr. Boatman found but fewer limitation than FNP Sevin found. The ALJ then determined that Dupre could perform sedentary work with the ability to alternate position every 30 minutes. R. Doc. 15-2, Tr. 17. These findings are incongruent with each other and not based on substantial evidence.

Moreover, the physical RFC in the record does not support the ALJ's RFC determination, nor does the ALJ point to any medical opinion evidence by a treating or examining physician regarding the impact of Dupre's physical impairments on her ability to work. Instead like in *Williams and Ripley,* the ALJ derived Dupre's RFC based solely on the evidence of her claimed medical conditions and her interpretation of the medical records. *See also Connie v. Berryhill,* Ni, 5:18-CV-1690BQ-ECF, 2019 WL 2516727 (N.D. Texas 2019)(Where the court recommended that the court vacate the Commissioner's decision and remand for further administrative proceedings due to reliance on raw medical data).

The Court in *Williams* noted that in making a determination, the "ALJ may not rely on his own unsupported opinion as to the limitations presented by the applicant's medical conditions." 355 F. Appx 832 n.6. As further evidence in the record, while the ALJ concluded that the beta blockers improved the syncope Dupre experienced in September 2017, by February 16, 2018, syncope had returned along with neuropathy and other conditions.

There is no evidence from a qualified medical expert that Dupre could perform sedentary work with all of her conditions even if her syncope improved, which remains questionable. Thus, the ALJ impermissibly relied on his own medical opinion as to the limitation represented by the severe impairments to develop his factual findings.

V.  **Conclusion**

Accordingly,

**IT IS ORDERED THAT** the Commissioner's decision is **VACATED.**

**IT IS FURTHER ORDERED THAT** the matter is **REMANDED** for additional administrative proceedings consistent with the analysis herein.

New Orleans, Louisiana, this 13th day of December 2021

_____
**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**